### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

**IN RE: ANTHONY CHARLES VOCCIA**        **Case No. 09-33513-DOT**
     Chapter 7 Debtor

**WACHOVIA BANK, NATIONAL ASSOCIATION**,
       Plaintiff

    v.                         **Adv. Pro. No. 09-03242-DOT**

**ANTHONY C. VOCCIA**
       Defendant

### <u>MEMORANDUM OPINION</u>

Plaintiff Wachovia Bank, National Association, a creditor in debtor's chapter 7 bankruptcy case, brought this adversary proceeding to deny debtor's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(2)(A) and (B), and § 727(a)(4)(A). Trial on the complaint was held on October 4, 2010, at the conclusion of which the court deferred argument and requested the parties to submit proposed findings of fact and conclusions of law.

This adversary proceeding is a core matter pursuant to 28 U.S.C. § 157, and the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.

After consideration of the trial record and the parties' submissions, the court finds, for reasons stated below, that the debtor's discharge in bankruptcy will be denied.

### <u>Findings of Fact.</u>

**Background.**

Debtor lives in Spotsylvania County, Virginia. He has been married to Pamela Voccia for twenty years, and they have two children.

Debtor, his brother Edward Voccia, and another individual are in business as concrete contractors. The three individuals are equal owners of Lands Concrete, Inc., a Virginia

corporation organized under Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1361-1379. Lands Concrete was formed in 1997 to operate as a concrete contractor and is still engaged in business. The corporation's 2008 federal income tax return discloses that it had gross income in the amount of $291,749 and an operating profit of $60,549. However, the corporation suffered a net loss based on its sales of property;[1] debtor's proportionate share of the loss was $76,688. On December 31, 2008, the corporation had total assets at book value of $430,925 and retained earnings of $64,925. (Pl. Ex.10.)

The same three individuals are equal owners of East Coast Modulars, Inc., a Virginia Subchapter S corporation formed in 2004 and operating as a concrete contractor. That corporation's 2009 federal income tax return discloses a profit of $627 on sales of $9,155. On December 31, 2009, East Coast Modulars had assets with a book value of $9,612, including $10,261 in cash, and no scheduled debt. (Pl. Ex. 22.)

Debtor *pro se* filed this chapter 7 case on June 2, 2009. He was assisted in the preparation of the petition by David Sillaman, who previously had filed *pro se* his own bankruptcy petition but otherwise had little experience in preparing bankruptcy petitions.

Harry Shaia Jr. was appointed debtor's chapter 7 trustee, and the initial § 341 meeting of creditors was held June 30, 2009. During this meeting, the trustee noted potential errors and omissions in the debtor's petition and schedules and advised debtor to obtain counsel. The trustee adjourned the § 341 meeting to a later date to allow debtor to obtain counsel.

On August 17, 2009, attorney Jeanne E. Hovenden noted her appearance as counsel for debtor. On debtor's behalf, Ms. Hovenden filed five amended schedules to debtor's petition on

---

[1]*See* 26 U.S.C. § 1231.

the following dates: 1) September 28, 2009 (Docket No. 47), 2) October 14, 2009 (Docket No. 57), 3) January 19, 2010 (Docket No. 85), 4) May 13, 2010 (Docket No. 119), and 5) September 17, 2010 (Docket No. 145). A summary of the amendments is attached as an Exhibit to this opinion. Debtor filed amended statements of affairs on January 19 and September 17, 2010.

On October 29, 2009, plaintiff's counsel conducted an examination of debtor under Fed. R. Bankr. P. 2004.

On September 13, 2010, plaintiff's counsel took debtor's deposition.

**Debtor's Schedules of Assets and Statements of Affairs.**

The following are significant aspects of debtor's original and amended asset schedules.

REAL PROPERTY - SCHEDULE A

Debtor's initial (*pro se*) Schedule A listed two parcels of real property, 8804 Boulevard of the Generals (Lot 8, Sec. 1, Estates of Lee-Jackson), Spotsylvania County, Virginia, at a value of $288,000 and 204 Privacy Road in Bumpass, Virginia, at a value of $250,000. The schedule stated that the properties were held by "Husband."

First Amended Schedule A (September 28, 2009). The first amended schedules were filed after debtor had retained Jeanne Hovenden as his attorney. First amended Schedule A listed four parcels of real property in addition to the two properties listed in the initial Schedule A. The four new properties were 1) 58 Twin Oak Lane, Littleton, N.C. ($15,000); 2) 18 Country Club Shores, Gasburg, Virginia ($15,000); 3) vacant lot (Lot 129) on Lake Anna in Bien Venue ($25,000); 4) 35R Sunny Acres Road, Littleton, N.C. ($25,000). The first amended Schedule A

stated that all six of the listed properties were owned as "Tenants by the Entireties."[2] The listed value of the Bumpass property was increased from $250,000 to $425,000.

Second Amended Schedule A (October 14, 2009). Debtor's second amended Schedule A listed the same properties as in the first amendment. However, this amendment stated that debtor's interest in the Spotsylvania County property was "beneficial interest" rather than tenants by the entireties.[3] This property, also known as Lot 8, Section 1 of the Estates of Lee-Jackson, is the residence of debtor and his wife and was formerly owned by them as tenants by the entireties. On August 25, 2008, Anthony and Pamela Voccacia conveyed this property in trust to Sugarland Properties, LLC, a Virginia limited liability company; they are the sole beneficiaries of the trust. The purpose for this transfer in trust was to protect debtor's property from tort claims. (Stip. Facts 18; Pl. Ex. 5.) Also in the second amended Schedule A, the value of 18 Country Club Shores was increased from $15,000 to $22,500 based on a contract to sell at that price. The total listed value of real property in the second amendment was $800,750.

Third Amended Schedule A (January 19, 2010). In his third amendment to Schedule A, debtor listed three properties not previously disclosed. These additional properties were shown to be owned as a tenant in common with debtor's brother Edward Voccia and described as lots 12, 38 and 40 of Bien Benue(sic) Plantation at Lake Anna with listed values, respectively, of $60,800, $60,800, and $66,800. Real estate tax bills for these lots were mailed to debtor at his

---

[2]However, with respect to the Spotsylvania and Bumpass properties, the September 28, 2010, schedules show an "H" in the column whose instructions read "If the debtor is married, state whether husband, wife, or both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint or Community."

[3]The "H" was also removed from the "Husband, Wife, Joint, or Community" column of Schedule A with respect to the Spotsylvania property.

residence. (Stip. Facts 39.) Other changes to Schedule A in the third amendment included an

increase in value for the Spotsylvania property from $288,000 to $325,000 and for Lot 129 Bien

Venue from $25,000 to $60,800. Additionally, the amendment stated that debtor's interest in his

Spotsylvania residence was "beneficial interest with wife in trust that owns the property." The

third amended Schedule A listed total value of the scheduled real property at $1,061,950.

There were no further amendments to debtor's real property schedules.

PERSONAL PROPERTY - SCHEDULE B

**Bank Accounts**

In his original petition schedules, debtor listed two bank accounts - a joint account in

Wachovia Bank with a balance of $500 and an individual account in Stellar One Bank with a

balance of $1,000. The same accounts and balances were reported in the second amendment filed

on October 14, 2009. In his third amended schedules, debtor increased the Wachovia balance

from $500 to $6,172.67 and reduced the Stellar One balance from $1,000 to $888.71. There were

no further changes to these listed bank balances in subsequent amendments.

**Cash**

Debtor's initial petition schedules stated that he had no cash on hand. In his first

amendment, he listed cash on hand in the amount of $10,000. The amount was the same in the

second amendment. In the third, fourth, and fifth amended schedules, the cash amount was listed

as "unknown."

**Other Accounts or Investments**

Debtor's initial schedules and first two amended schedules stated that he owned no other

financial or investment accounts. However, his ownership of such accounts was revealed in

5

subsequent amendments:

> ING DIRECT (online banking). In his third amended schedules, debtor listed a $50 "estimated" balance in ING. In his fourth and fifth amendments, debtor listed an ING saving account with a balance of $428.22 and an ING Sharebuilder account of $280.25.

> American Funds (mutual fund). In his final amendment, debtor listed an American Funds mutual fund with a value of $830.17.

> Ameritrade. In his final amendment, debtor listed an Ameritrade account with a value of $126.16.

**Business Interests**

In his initial schedules debtor stated that he owned no interests in any business assets. However, business interests were revealed in his amended schedules.

Land's Concrete, Inc.  In his first and second amendments debtor listed a one third ownership in Land's Concrete, Inc, a Virginia corporation with a value of "unknown." His third amendment stated that this interest had a zero value and included an explanation "that the company had no equity due to its guaranty of the Wachovia loan totaling $557,228.45."[4] The same explanation was stated in the fourth and fifth amendments except that the value was shown as $1.00.

East Coast Modulars, Inc.  Debtor's first and second amended schedules disclosed a one third ownership interest in East Coast Modulars, Inc., stating that its only asset was a $1,000 bank account and a value of zero. His third, fourth, and fifth amendments stated that the

---

[4]Debtor's guaranty of the Wachovia loan is the basis of its claim against debtor in debtor's chapter 7 bankruptcy case.

corporation's "assets are $811.77 in bank account and vacant lot located at 327 Third Street,
Spotsylvania, assessed at $55,000 (land value only)." The listed value of debtor's interest was
increased to $18,417.88.

**Motor Vehicles**

Debtor's initial Schedule B disclosed his ownership of assets under the category of motor
vehicles. These were a 2001 Ford F-350 with a value of $16,000, a 1999 American Eagle with a
value of $115,000, and a 2005 Fleetwood Revolution with no stated value.

Debtor's first amendment removed the 2001 Ford F-350 from his schedules, reduced the
value of the 1999 American Eagle from $115,000 to $57,500, and placed a value of $120,000 on
the 2005 Fleetwood Revolution. These listings were not changed in subsequent amended
schedules.

Debtor's first amendment also revealed for the first time his ownership of additional
vehicles - a 1998 Jeep Wrangler, valued at $4,200, a 1999 Kawasaki Motorcycle, valued at
$1,330, and a 1998 Ford Windstar, valued at $900. These listings were not changed in debtor's
subsequent amended schedules.

**Boat**

Debtor's final amended schedules revealed for the first time his ownership of a boat, a
1996 Hydra Pontoon, jointly owned with his wife and which he valued at $500.

OTHER DISCREPANCIES IN DEBTOR'S SCHEDULES OF ASSETS

In addition to the omissions related above, a comparison of debtor's original schedules
with subsequent amendments reveals that he omitted numerous assets of nominal value that
should have been reflected in his schedules.

SUMMARY OF OMITTED ASSETS

The total of real and personal property values listed in debtor's initial petition schedules was $680,700. The same total revealed in his first amendment to the schedules, as prepared by his attorney, was $999,712. The same total revealed in the fifth amendment was $1,279,485.

DEBTOR'S STATEMENTS OF AFFAIRS

The statement of affairs filed with debtor's petition on June 2, 2009, checked "no" in virtually every block and disclosed no substantive information. The statement of affairs was amended with the filing of the third amendment on January 19, 2010. This amendment disclosed debtor's income received during the years preceding the bankruptcy petition, his sale of a vehicle in 2009, his sale of a real estate lot in Wyndemere, Spotsylvania County, Virginia, in 2008, and his interest in the two Subchapter S corporations, Lands Concrete and East Coast Modulars. Debtor filed a second amendment to his statement of affairs, along with the final schedule amendment on September 17, 2010.

The Exhibit attached to this opinion includes a partial list of previously undisclosed property transfers and undisclosed accounts that were included in the final amendments to the statement of affairs and schedules. For example, debtor did not disclose until the September 17, 2010, amendments that on November 18, 2008, he had sold for $70,000 real property described as "Lot 17, Sec 1 Wyndemere, Spotsylvania County VA" that he had owned with his wife Pamela (deed states consideration was $36,500 - Pl. Ex. 65); he did not disclose until the September 17, 2010, amendments that he had sold lots 48 and 124, Bien Venue, jointly owned with Edward Voccia, on June 20, 2007, for $55,000 each; also in  the September 17, 2010, amendments he disclosed for the first time that on November 17, 2007, he sold lot 130, Bien

Venue, owned with wife Pamela.

### Wachovia Bank's Complaint.

On August 13, 2010, plaintiff Wachovia Bank, N.A., filed its amended complaint seeking to deny debtor's discharge pursuant to provisions of Bankruptcy Code § 727(a)(2)(A) and (B) (hinder, delay, or defraud a creditor) and § 727(a)(4)(A)(false oath or account).[5] The gravamen of Wachovia's complaint is that debtor, filing under oath, omitted assets and asset transfers and misstated values of assets in his original and amended schedules.

### Discussion and Conclusions of Law.

Section 727 of the Bankruptcy Code allows debtors to receive a general discharge of their debt in keeping with the Code's purpose of giving honest debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) (quoting *Lines v. Frederick*, 400 U.S. 18, 19 (1970)).  However, provisions enumerated in § 727(a)(1)-(10) prohibit a discharge for those who "play fast and loose with their assets or with the reality of their affairs." *Id.* (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)); *First Union Nat'l Bank v. Golob (In re Golob)*, 252 B.R. 69, 75 (Bankr. E.D. Va. 2000). A party objecting to a discharge need only prove one of the grounds for non-dischargeability under § 727(a) because these provisions are phrased in the disjunctive. *Farouki* at 250. Proof of any one of the subsections is enough to justify a denial of a debtor's discharge. *Id.*

---

[5] The amended complaint also contained a count to except debt from discharge pursuant to provisions of § 523(a). Subsequently, at the request of the parties, the court dismissed the § 523(a) count.

A leading treatise on bankruptcy law has stated:

> The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. Courts have noted that "a total bar to discharge is an extreme penalty." The reasons for denial of a discharge must be real and substantial rather than technical and conjectural. However, "[w]hile the law favors discharges in bankruptcy, it will not ordinarily tolerate the [debtor's] intentional departure from honest business practices where there is a reasonable likelihood of prejudice." . . .

*See* 6 *Collier on Bankruptcy*, ¶ 727.01[4] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2010) (citations omitted).

In a proceeding to deny a debtor's discharge in bankruptcy, Bankruptcy Rule 4005 places the burden on the plaintiff to prove the objection by a preponderance of the evidence. Fed. R. Bankr. P. 4005*, Farouki v. Emirates Bank Int'l., Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994). However, a debtor may be called upon to offer rebuttal evidence once the plaintiff has established a prima facie case for denial of discharge. *Id*.

Plaintiff Wachovia Bank grounds its complaint to deny debtor's discharge under the exceptions in §§ 727(a)(2)(A) and (B) and 727(a)(4)(A). Section 727(a)(2) provides that:

> (a) The court shall grant the debtor a discharge, unless--
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

Of significance in this case, § 727(a)(2) serves to deny a discharge when the debtor "attempts to prevent the collection of his debts by concealing or disposing of assets." *Butler v. Ingle (In re Ingle)*, 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987); 6 *Collier on Bankruptcy* ¶ 727.03[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2010).

10

Section 727(a)(4)(A) states that a discharge will not be granted if the debtor "made a false oath or account." 11 U.S.C. § 727(a)(4)(A). For discharge to be denied under § 727(a)(4)(A), "the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud." *Fed. Deposit Ins. Corp. v. McFarland (In re McFarland)*, 197 B.R. 222, 224 (Bankr. E.D. Va. 1995). A false statement or omission in a debtor's schedule or statement of financial affairs qualifies as a false oath. *See Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251-52 (4th Cir. 1987); *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685-86 (6th Cir. 2000); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Whether a particular debtor has satisfied the knowledge, willfulness, and intent elements of § 727(a)(4)(A) is a question of fact. *See In re McFarland*, 197 B.R. at 224. Because the average debtor will deny the fraudulent intent alleged by a party seeking denial of the debtor's discharge, a court may decide the issue upon circumstantial evidence or "inferences drawn from a course of conduct." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d at 252.

Section 727(a)(4)(A) also requires that the subject of a  false oath be material. "The subject matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to the debtor's business transactions or estate, concerns the discovery of assets or business dealings, or the existence and disposition of property." *In re McFarland*, 197 B.R. at 224.

The exceptions to discharge for concealment of assets under § 727(a)(2) and false oath under § 727(a)(4) usually go hand in hand because a debtor who fraudulently conceals assets in the petition has also necessarily made a false oath by signing the petition. Thus, the court finds it

11

unnecessary to separately analyze the evidence with respect to each section because if debtor intended to defraud creditors by omitting assets in his petition, he also filed that petition under false oath.

Plaintiff's position, stated in its proposed findings, takes a broad brush approach to debtor's schedules and statements, listing 26 instances of debtor's failure to disclose business interests, real and personal property, financial accounts, including the closing of accounts, and transfers of assets. With minimal analysis of individual items, plaintiff contends that debtor's fraudulent intent may be inferred from the many schedule and statement omissions, that debtor was sufficiently sophisticated to understand his responsibility to disclose his assets, and that debtor engaged in a pattern of "reckless and cavalier disregard for the truth" sufficient to prove fraudulent intent. Plaintiff notes that debtor made the additional disclosures only after being confronted by plaintiff in a Rule 2004 exam and a pre-trial discovery deposition and argues that the court may deduce debtor's fraudulent intent from the facts and circumstances of the case. Finally, plaintiff argues that the pre-petition transfer by debtor and his wife of their residence property to a trust of property within one year of the bankruptcy filing was a fraudulent transfer that justifies denial of discharge under § 727(a)(2)(A).

Debtor's argument, unlike plaintiff's, contains detailed analyses of individual items, by which he seeks to disprove that he committed fraud or lied under oath. He freely acknowledges the inadequacy of the initial petition schedules and statements of affairs, blaming these shortcomings on David Sillaman, who assisted debtor in the preparation of the initial papers. Debtor argues that Sillaman was unqualified for the task, that the product of his efforts was "abysmal" and that debtor innocently relied upon Sillaman, which should proscribe a finding of

12

fraud on debtor's part. Moreover, debtor relies on his own "lousy" financial abilities and

organizational ineptitude as supported by testimony of his wife and the office manager of Lands

Concrete. Debtor also contends that his schedule and statement omissions do not meet the test

for materiality, as many of the items cited by plaintiff were nominal in value and subject to

exemption. Debtor also notes that the tenancy by the entireties realty debtor owns with his wife,

which was initially omitted, has been claimed exempt in his amended schedules without

challenge by debtor's trustee. He points out that other omitted assets have been claimed exempt

without objection.

     To some extent, the court accepts debtor's argument regarding the initial schedules. If he

had promptly amended the initial papers to correct the omissions, plaintiff would probably not

have much of a case to deny debtor's discharge. However, debtor did not make prompt

amendment to his schedules and statement of affairs, and thus the court looks beyond debtor's

first amended schedules for more probative evidence of an intent to defraud creditors.

     With respect to the deficiencies in subsequent amendments, debtor attributes these to his

own shortcomings, which he attempted to explain at trial. His testimony included the following:

> And I think the biggest challenge Ms. Hovenden had was conveying to me what
> the true meaning of something is I think was our biggest challenge. I just – I
> didn't always – I don't always understand things in these terms. Once she was
> able to figure out how I am and what makes me tick then she was able to talk on
> my terms for me to understand and that helped out a lot. And every time
> something else would come in front of us, you know, jog a memory or whatever
> and I'd understand it different and we were able to keep fixing it . . . .

(Tr. 166.)

     As noted, debtor argues that the values of omitted assets were not material and thus not a

basis to deny his discharge. This particular contention must be rejected in view of the overall

13

discrepancies in values of listed property. Debtor's initial petition filed on June 2, 2009, listed

total assets of $680,700; after he retained an attorney, debtor's first amended schedules filed

September 28, 2009, revealed total assets of $999,712; over fifteen months after filing his

petition, on September 17, 2010, debtor filed a fifth amendment with total assets of $1,279,485.

Many, if not most, of the later corrections were made only after debtor had been confronted by

plaintiff in a Rule 2004 examination or in a pre-trial deposition. Thus, viewed as a totality, the

discrepancies in debtor's schedules were anything but immaterial. This is not the whole story, of

course, and the court must take a closer look at individual items in the schedules.

It is true that many individual omitted assets were relatively nominal in value. However,

there were a few omissions that cannot be classified as nominal. From his initial schedules,

debtor omitted four parcels of realty that he owned with his wife. He scheduled this realty in his

first amendment with total values of $80,000. In his third amendment, debtor increased the value

of one of these lots, 129 Bien Venue, from $25,000 to $60,800. The fact that these lots were

owned by debtor and his wife and were exemptible as to debtor's individual debts does not mean

that the court should ignore them in deciding whether to deny discharge.

More serious than the omission of the property jointly owned with his wife was debtor's

failure to disclosed three parcels of property that were titled in the name of debtor and his

brother Edward Voccia. These lots, valued at a total of $188,400, were not reported until

debtor's third amended schedules were filed, over seven months after his petition, on January 19,

2010.

Debtor originally reported that he had no cash on hand; he amended this to $10,000 and

later to "unknown." Thus the court still does not know what cash debtor had or why the amount

14

became unknown. He increased an original balance in Wachovia Bank from $500 to $6,127. And although the values were not large, debtor omitted listing other bank and financial accounts until his later amendments.

Debtor failed to list in the original schedules his one third interest in two businesses that had been his livelihood. His attorney claims that these corporations have no value because their debts exceed their assets. However, insolvency is not the only test of value. Debtor earns his livelihood from these companies, and both are still operating. Lands Concrete's most recent federal income tax return suggests the possibility of its continued viability. The company, which was incorporated in 1997, had gross income in 2008 of $291,749 and operating income of $60,549. While it suffered an overall loss on sales of property in 2008, the corporation had total assets at book value of $430,925 and retained earnings of almost $65,000. The value of debtor's interest in his other business, East Coast Modulars, shown as zero in his first and second amendments, was later increased to $18,417.

The omissions just mentioned are not immaterial. However, error ridden bankruptcy schedules and statements do not necessarily prove debtor's fraudulent intent. His primary defense is that he lacked an understanding of just what was needed to assist his attorney in the preparation of complete and accurate schedules and statements.

Plaintiff argues that debtor, contrary to his assertions, was sufficiently sophisticated to understand his obligation to disclose assets and failed to do so. Plaintiff argues that at the very least, debtor evinced a reckless disregard of his obligation, and his fraudulent intent is established by the sheer number of inaccuracies.

The court must be skeptical of debtor's professed inability during a period in excess of

15

fifteen months to come to grips with his responsibility to make accurate disclosure of his assets and financial affairs. I find it difficult to take his testimony at face value given the length of time he has operated a business in which he has accumulated over a million dollars in property value. Debtor's intractability and delay have placed an unnecessary burden on this court and on the trustee, not to mention requiring plaintiff to expend substantial resources in debtor's bankruptcy case and in this adversary proceeding.

Mere skepticism of debtor's testimony is not necessarily the same as a finding that plaintiff has carried its burden of proof. However, the evidence of record goes beyond skepticism. The court has previously summarized debtor's material omissions, the most damning of which was debtor's failure to disclose three parcels of real property that he held with his brother. At trial, debtor testified that he had omitted earlier listing of these three lots because it was his "understanding the lots were given to Edward as collateral for money he had loaned the company. That's the whole reason I never listed the lots . . . ." (Tr. 162.) There is no evidence that any of the lots were ever transferred to Edward. The court finds that debtor's professed rationale in this testimony suggests an astuteness on his part that is not supported by his other evidence.

The court finds that based on the large number of discrepancies and omissions in debtor's original and amended schedules and statements, combined with the material omissions previously mentioned, the plaintiff has carried its burden to prove that debtor "with intent to hinder, delay, or defraud . . . concealed property of the debtor . . ." either within one year before the bankruptcy filing date or after the filing date. 11 U.S.C. § 727(a)(2). In addition, the court finds that based on the same conclusions, debtor in filing his petition, schedules, and statements

"made a false oath or account." 11U.S.C. § 727(a)(4). Based on these findings, the court will enter an order denying debtor's discharge in bankruptcy.

Finally, plaintiff has also alleged that debtor's discharge should be denied under § 727(a)(2)(A) based upon debtor's fraudulent transfer of his residential real property (Lot 8, Section 1, Estates of Lee-Jackson) in Spotsylvania County. Anthony and Pamela Voccia previously owned the property as tenants by the entireties, and on August 25, 2008, they conveyed it in trust to Sugarland Properties, LLC. Under the trust agreement with Sugarland, the Voccias retained the beneficial interest in the property and the right to terminate the trust. (Pl. Ex. 5.) At trial, both debtor and his wife testified that this property was transferred in trust "to protect us if we get sued . . . ." (Tr. 107-108, 64.)

While asset planning in itself is not a reason to deny discharge, in this case, taken in conjunction with debtor's other errors and omissions, the transfer of property to Sugarland Properties in trust constitutes yet further confirmation of debtor's intent to conceal property from his creditors, or to delay or hinder those creditors from recovery. The court need not find that this transfer alone would suffice to deny discharge but rather views the transfer as another missing piece in the tardily emerging solution to debtor's financial puzzle.

A separate order will be entered denying debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (4).

Signed: <u>February 1, 2011</u>          <u>/s/ Douglas O. Tice Jr.          </u>
                                        DOUGLAS O. TICE JR.
                                        CHIEF JUDGE
                                        UNITED STATES BANKRUPTCY COURT


Copies to:

17

Jeremy S. Williams
Loc Pfeiffer
KUTAK ROCK LLP
1111 E. Main Street, Suite 800
Richmond, Virginia 23219-3500
*Counsel for the Plaintiff*

Douglas Scott
Douglas A. Scott, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
*Co-Counsel for Defendant*

Jeanne E. Hovenden
Jeanne E. Hovenden, P.C.
P.O. Box 1839
Chesterfield, Virginia 23832
*Co-Counsel for Defendant*

Anthony C. Voccia
8804 Boulevard of the Generals
Spotsylvania, Virginia 22553

Harry Shaia, Jr
Spinella, Owings & Shaia, P.C.
8550 Mayland Drive
Richmond, VA 23294
*Chapter 7 trustee*

18

**EXHIBIT**
**SUMMARY OF AMENDMENTS**

| Asset | Petition 6/2 | First Amendment 9/28 | Second Amendment 10/14 | 2004 Exam 10/29 | Third Amendment 1/19 | Fourth Amendment 5/13 | Deposition of Anthony Voccia 9/13 | Fifth Amendment 9/17 |
|---|---|---|---|---|---|---|---|---|
| **Real Property** | | | | | | | | |
| 8804 Blvd of the Generals | $288,000 | $288,000 | $288,000 | | $325,000 | N/A | | N/A |
| 204 Privacy Road | $250,000 | $425,000 | $425,000 | | $425,000 | N/A | | N/A |
| 58 Twin Oak Lane | | $15,000 | $15,000 | | $15,000 | N/A | | N/A |
| 18 Country Club Shores | | $15,000 | $22,750 | | $22,750 | N/A | | N/A |
| Lot 129 Bien Venue | | $25,000 | $25,000 | | $60,800 | N/A | | N/A |
| 35R Sunny Acres Road | | $25,000 | $25,000 | | $25,000 | N/A | | N/A |
| Lot 12 Bien Venue | | | | | $60,800 | N/A | | N/A |
| Lot 38 Bien Venue | | | | | $60,800 | N/A | | N/A |
| Lot 40 Bien Venue | | | | | $66,800 | N/A | | N/A |
| | | | | | | | | |
| **Bank Accounts** | | | | | | | | |
| Wachovia | $500 | $500 | $500 | | $6,172.67 | $6,172.67 | | $6,172.67 |
| Stellar One | $1,000 | $1,000 | $1,000 | | $888.71 | $888.71 | | $888.71 |
| Cash | | $10,000 | $10,000 | | Unknown | Unknown | | Unknown |
| ING | | | | | $50 | $428.22 | | $428.22 |
| Sharebuilder | | | | | | $280.25 | | $280.25 |
| American Funds | | | | | | | | $830.17 |
| Ameritrade | | | | | | | | $126.16 |
| **Business Interests** | | | | | | | | |
| Land's Concrete | | Unknown | Unknown | | $0 | $1 | | $1 |
| East Coast Modulars | | $0 | $0 | | $18,417.88 | $18,417.88 | | $18,417.88 |
| Sugarland Properties | | $0 | Moved to Item No. 35 | | Moved to Item No. 35 | Moved to Item No. 35 | | Moved to Item No. 35 |
| VVR Equipment, LLC | | | | | | | | $0 |
| Team FBREIA LLC | | | | | | | | Included on SOFA |

## SUMMARY OF AMENDMENTS (CONTINUED)

| Asset | Petition 6/2 | First Amendment 9/28 | Second Amendment 10/14 | 2004 Exam 10/29 | Third Amendment 1/19 | Fourth Amendment 5/13 | Deposition of Anthony Voccia 9/13 | Fifth Amendment 9/17 |
|---|---|---|---|---|---|---|---|---|
| **Vehicles** | | | | | | | | |
| 2001 Ford F-350 | $16,000 | Removed | | | | | | |
| 1999 American Eagle | $115,000 | $57,500 | $57,500 | | $57,500 | $57,500 | | $57,500 |
| 2005 Fleetwood Revolution | | $120,000 | $120,000 | | $120,000 | $120,000 | | $120,000 |
| 1998 Jeep Wrangler | | $4,200 | $4,200 | | $4,200 | $4,200 | | $4,200 |
| 1999 Kawasaki Motorcycle | | $1,330 | $1,330 | | $1,330 | $1,330 | | $1,330 |
| 1998 Ford Windstar | | $900 | $900 | | $900 | $900 | | $900 |
| 1996 Hydra Boat | | | | | | | | $500 |
| **Insurance** | | | | | | | | |
| Met Life | | $0 | $0 | | $0 | $0 | | $0 |
| **Transfers** | | | | | | | | |
| Wyndemere Property | | | | | Sold for $70,000 | N/A | | Sold for $70,000 |
| Lot 48 Bien Venue | | | | | | | | Sold for $55,000 |
| Lot 12 Bien Venue | | | | | | | | Sold for $55,000 |
| Lot 130 Bien Venue | | | | | | | | No sales price |
| Kawasaki | | | | | | | | No sales price |
| 1990 Toyota Truck | | | | | Sold for $1000 | N/A | | Sold for $1000 |
| **Closed Accounts** | | | | | | | | |
| Carter Bank and Trust | | | | | | | | Closed 10/23/08 |
| Oppenheimer | | | | | | | | Closed in 2007 |
| ING Life Insurance | | | | | | | | Closed in 2008 |

20

## SUMMARY OF TOTAL ASSETS

| | Petition  6/2 | First Amendment 9/28 | Second Amendment 10/14 | 2004 Exam 10/29 | Third Amendment 1/19 | Fourth Amendment 5/13 | Deposition of Anthony Voccia 9/13 | Fifth Amendment 9/17 |
|---|---|---|---|---|---|---|---|---|
| **SUMMARY** | | | | | | | | |
| **Real Property** | $538,000 | $793,000 | $800,750 | ■ | $1,061,950 | $1,055,950 | ■ | $1,055,950 |
| **Personal Property** | $142,700 | $206,712 | $206,712 | ■ | $220,739 | $222,078.73 | ■ | $223,535.06 |
| **Increase Since Petition** | | **$319,012** | **$326,762** | ■ | **$601,989** | **$597,328.73** | ■ | **$598,785.06** |